E-FILED
Tuesday, 25 October, 2016  07:01:06 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| ESTATE OF JOEY CORBIN, by CHRISTINE CORBIN, as Personal Representative of the Estate, and on behalf of the Survivors, | CASE NO.  16-cv-4232 |
| Plaintiff, | |
| v. | |
| KNOX COUNTY, KNOX COUNTY SHERIFF DAVID L. CLAGUE, Knox County Deputies HEIDI HAWKINS, LOUIS GLOSSIP and BRAD ABERNATHY, ADVANCED CORRECTIONAL HEALTH CARE, and AMY STOMBERG, | |
| Defendants. | |

## COMPLAINT

Plaintiff sues Defendants and alleges:

### Introduction

1.     On October 27, 2015, Joey Corbin threaded a sheet through a window in his cell at the Knox County Jail and hung himself.

2.     Joey Corbin was booked into the Knox County Jail on October 14, 2015.

3.     Joey Corbin struggled with mental illness. Mr. Corbin was on a regimen of psychotropic medications.

4.     Joey Corbin found little support at the Knox County Jail. A cost-saving policy

1

of failing to provide effective medications in a timely manner and jail understaffing left Mr. Corbin without treatment and protection at a critical period of his mental illness.

5.    Prior to his suicide, Joey Corbin had just received news that his bond was not going to be lowered and he would remain in the Knox County Jail.

6.    After receiving the news that his bond was not going to be reduced, Joey Corbin called his parents.

7.    During the phone call, Joey Corbin said his goodbyes, told his family he loved them, and told them that his situation was not their fault.

8.    Joey Corbin was extremely despondent during this phone call.

9.    Shortly after the phone call was made, Deputy Kraemer listened to the call which had been recorded by the Securus System. Deputy Kraemer was alarmed by the tone and content of Mr. Corbin's conversation.

10.   Deputy Kraemer acted responsibly and alerted Defendants LOUIS GLOSSIP ("Defendant GLOSSIP") and BRAD ABERNATHY ("Defendant ABERNATHY") of his concerns about Joey Corbin's wellbeing. He did this, *inter alia*, for the safety of Joey Corbin.

11.   Despite this alarming information about Joey Corbin's condition, Defendants GLOSSIP and ABERNATHY took no action, and Joey Corbin was left alone in his cell to ponder suicide.

12.   In desperation, Joey Corbin acted on the suicidal impulses that had come to the

2

attention of Deputy Kraemer and been reported to Defendants GLOSSIP and

ABERNATHY. When Defendant HEIDI HAWKINS ("Defendant

HAWKINS") failed to make a mandatory cell check, Joey Corbin killed himself.


**Jurisdiction and Venue**

13.  This Court has jurisdiction over this matter under the following:

   a.  28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

   b.  28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

   c.  28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

14.  Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

3

15.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

16.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## **Parties**

17.  Plaintiff CHRISTINE CORBIN is the duly appointed Personal Representative of the Estate of Joey Corbin, having been appointed Personal Representative by the Probate Division of the Circuit Court of The Ninth Judicial Circuit, Knox County, in Case No.: 2016-P-165. This action is brought by CHRISTINE CORBIN, mother of Joey Corbin, in her capacity as Personal Representative of the Estate of Joey Corbin, on behalf of the Estate of Joey Corbin, and on behalf survivors, Olivia Jean Corbin, Greyson Jacob Flynn and Bentley Joseph Corbin.

18.  At all relevant times, Joey Corbin, Plaintiff's decedent, was a pre-trial detainee confined in the Knox County Jail, Galesburg, Illinois, a correctional facility maintained by Defendant KNOX COUNTY SHERIFF DAVID L. CLAGUE ("Defendant CLAGUE").

19.  At all relevant times, Defendant CLAGUE was the duly elected sheriff of Knox County and chief administrator of the Knox County Jail.  At all relevant times, he was acting under color of law and in the course and scope of his employment as the agent, servant, and an official policy maker for Defendant

4

KNOX COUNTY on issues relating to care of prisoners in Knox County Jail and the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit, and as the County's chief law enforcement officer. Defendant CLAGUE was the commanding officer of all Knox County sheriff's deputies, correctional officers, and jail employees, and he was responsible for their training, supervision, and conduct. He is sued in his official and individual capacities.

20. At all relevant times Defendant GLOSSIP was the jail administrator in charge of the Knox County Jail and was employed by the Defendant KNOX COUNTY and/or Defendant CLAGUE. Defendant GLOSSIP was also responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  At all relevant times, Defendant GLOSSIP was acting under color of law and in the course and scope of his employment. He is sued in his individual capacity.

21. At all relevant times Defendant ABERNATHY was the chief of jail operations of the Knox County Jail and was employed by the Defendant KNOX COUNTY and/or Defendant CLAGUE. Defendant ABERNATHY was also responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  At all relevant times, Defendant ABERNATHY was acting under color of law and in the course and scope of his employment. He is sued in his individual capacity.

5

22.   At times material to this complaint, Defendant HAWKINS was employed by the Defendant KNOX COUNTY and/or Defendant CLAGUE who was responsible for the well-being and safety of pre-trial detainees at the Knox County Jail, including doing cell checks every thirty (30) minutes on pre-trial detainees housed in her unit. At all times material to this action, Joey Corbin was a pre-trial detainee subjected to the care, custody and control of Defendant HAWKINS while he was housed in her unit. Defendant HAWKINS is sued in her individual capacity.

23.   At times material to this complaint, Defendant ADVANCED CORRECTIONAL HEALTH CARE. ("ACH"), an Illinois corporation doing business in Illinois that had a contract with Defendant KNOX COUNTY to provide medical and mental health care to those detained in the Knox County Jail. Defendant ACH was responsible for providing all medical services to detainees, including but not limited to assessment of need for services; provision of care and treatment services for all health care needs and follow up; and for hiring, training, supervision and conduct of all health care providers the Knox County Jail. At all relevant times, ACH by and through its employees and agents, was acting under color of law and its agents and employees were acting in the course and scope of their employment.

24.    Defendant ACH was responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and

6

omissions, challenged by this suit.

25.  At times material to this complaint, Defendant, AMY STOMBERG, was a Registered Nurse who was responsible for patient care at the Knox County Jail. Defendant STOMBERG was responsible for carrying out the policies and procedures for mental health care then in effect at the Knox County Jail and for the timely response to the mental health care needs of pre-trial detainees occurring, and coming to her attention. At all times material to this action, Joey Corbin was a pre-trial detainee subject to the care and treatment of Defendant STOMBERG. Defendant STOMBERG is an employee of Defendant ACH.

26.  Defendant CLAGUE is responsible for ensuring that the Knox County Jail is in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

## Common Allegations of Fact

27.  On or about October 14, 2015, Joey Corbin was booked into the Knox County Jail.

28.  Joey was on psychotropic medications and suffered from mental illness.

29.  His initial screening form indicated that Joey suffered from depression and anxiety.

30.  Joey did not have all of his medications when he was booked into the Knox County Jail.

31.  Joey had numerous phone conversations with his mother, CHRISTINE

7

CORBIN, regarding medication that he needed while he was in Knox County Jail.

32. Joey complained to his mother that he was having issues with Defendant STOMBERG not giving him his medication, and that Defendant STOMBERG told Joey he was stressing her out.

33. Joey was also having issues with alcohol withdrawal after entering the Knox County Jail.

34. Plaintiff called the Knox County Jail and spoke with Defendant STOMBERG regarding Joey's medication and his need for mental health treatment during his incarceration. Defendant STOMBERG refused to talk about Joey's medical information with Plaintiff, claiming it would be a HIPAA violation.

35. Plaintiff informed Defendant STOMBERG that Joey was trying to sign a HIPAA release but staff was refusing to provide him with one. Defendant STOMBERG told Plaintiff she had no idea about any such waiver.

36. In a prior stay at the Knox County Jail, Joey Corbin's attorney called the jail and notified them that Joey was possibly suicidal. A memorandum was generated and made part of Joey's inmate file.

37. On October 27, 2015, Joey Corbin had a court date for the criminal case for which he was in custody.

38. Joey Corbin was hoping that his bond would be lowered so he could bond out of jail.

8

39.    Joey Corbin's bond was not lowered.

40.    Joey Corbin became distraught and despondent after the court hearing.

41.    On October 27, 2015, Joey was transferred to a new housing unit in the Knox
       County Jail.

42.    Joey was upset about the move and asked to speak with Defendants GLOSSIP
       and ABERNATHY.

43.    Joey said that if he was not moved, there were going to be problems. He
       requested grievance forms. No grievance forms were provided.

44.    Deputy Marshall, working in the control room at the Knox County Jail,
       contacted Defendants GLOSSIP and ABERNATHY regarding Joey's
       complaints, but they never came to see Joey.

45.    On October 27, 2015, after returning from court, Joey called Plaintiff and his
       father and told them he loved them, and told them to tell other family members
       he loved them and that it was not their fault. He further told them that he had
       served his purpose in life.

46.    Shortly after that phone call, Deputy Kraemer listened to the recording of the
       call.

47.    Deputy Kraemer became concerned for the safety of Joey and notified
       Defendants GLOSSIP and ABERNATHY, as they are in charge of the jail.

48.    Deputy Kraemer was concerned, *inter alia*, because Joey was speaking in the past
       tense during the phone call.

9

49. In response, Defendants GLOSSIP and ABERNATHY did not place Joey on suicide watch or check on him. They did nothing at all.

50. Defendant STOMBERG completed a medical history assessment with Joey on or about October 26, 2015.

51. One of the questions on the assessment form asked about suicidal ideation. This questions was originally marked "yes" but was subsequently crossed out and marked "no".

52. Defendant STOMBERG did not place Joey on suicide watch after the positive response to suicidal ideation question.

53. On October 27, 2015, Defendant HAWKINS was assigned to Joey's housing unit.

54. As part of the duties of a housing unit officer, cell checks are to be made on all inmates at least every thirty (30) minutes.

55. On October 27, 2015, Defendant HAWKINS did not make cell checks every thirty (30) minutes.

56. On the Knox County Jail Pod Log Sheet, Defendant HAWKINS indicated that she performed the thirty-minute cell check in Joey's housing unit and that the unit was "secure".

57. According to the Knox County Standard Operating Procedures ("SOP") when a correctional officer conducts cell checks, they are to look in *all* cells and check on *all* inmates to make sure the inmates are safe.

58.   On October 27, 2015, at approximately 7:07 p.m., Joey placed a noose around
      his neck and hung himself.

59.   On October 27, 2015, at approximately 7:08 p.m., Defendant HAWKINS
      entered Joey's housing unit to conduct cell checks.

60.   Defendant HAWKINS never went to Joey's cell to check on him.

61.   Defendant HAWKINS left the housing unit within thirty (30) seconds after
      entry.

62.   The next cell check was not done until approximately 7:23 p.m. by Defendant
      HAWKINS.

63.   When Defendant HAWKINS approached Joey's cell, she observed him hanging
      from the window. Defendant HAWKINS radioed for assistance.

64.   Defendant HAWKINS did not immediately enter Joey's cell.

65.   Another minute passed before any correctional officers entered Joey's cell.

66.   When they did enter Joey's cell, they were only able to detect a faint pulse.

67.   Joey was transported to the hospital. On October 30, 2017, he was pronounced
      dead.

68.   Upon information and belief, it took approximately seventeen (17) minutes for
      Joey to sustain his fatal injuries.

69.   ACH Defendants knew at the time they saw Joey Corbin that he had serious
      medical and mental health care needs.

70.   ACH Defendants knew at the time they saw Joey Corbin that if they did not

11

provide appropriate and effective care, Joey Corbin's physical and mental health could worsen.

71.  All Defendants knew that Joey Corbin, as a pre-trial detainee in the Knox County Jail and had no other treatment options, and that if they (ACH and the Knox County Defendants) failed to provide adequate treatment, he could access no other treatment.

72.  At times material hereto, Defendant CLAGUE and Knox County Sheriff's employees and agents acting on his behalf, acted within the scope of their employment and under color of state law.

73.  At all times material hereto, Defendant CLAGUE conducted regular audits and received reports on conditions in the Knox County Jail. Therefore, Defendant CLAGUE was well aware that inmates, including Joey Corbin, were not receiving minimally adequate mental health care while incarcerated in the Knox County Jail.

74.  Defendant CLAGUE was aware there was not a sufficient mental health staff the Knox County Jail to address the mental health needs of inmates suffering from severe symptoms and self-destructive behavior.

75.  Defendant CLAGUE had heavily participated in budget plans that left mental health needs unmet for inmates like Joey Corbin.

12

76.    Defendant CLAGUE was aware that correctional staff were untrained and prone to ignore mental health problems, frequently causing harm to inmates in their care.

77.    Defendant CLAGUE was aware that correctional staff were untrained and prone to ignore the requirement to conduct cell checks every thirty (30) minutes.

78.    At all times material, Defendant CLAGUE knew that the training given to correctional staff did not sufficiently provide the staff necessary information regarding the right of inmates such as Plaintiff's decedent to be kept safe and provided with proper medical care.

79.    The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Plaintiff's decedent.

80.    As a direct and proximate result of Defendants' acts and omissions, Joey Corbin committed suicide by hanging himself in his cell on October 27, 2015.

81.    Plaintiff has had to retain counsel and is entitled to reimbursement of a reasonable attorneys fee, pursuant to 42 USC §1988.

## Causes of Action:

### I.    Claims under 42 U.S.C. 1983: Defendant CLAGUE

82.    Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

83.    Plaintiff is entitled to relief against Defendant CLAGUE under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

84. At all times material, Plaintiff's decedent, Joey Corbin had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the Knox County Jail, and to have his mental health issues timely and properly assessed and treated.

85. Defendant CLAGUE deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in the Knox County Jail in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering and death.

86. Defendant CLAGUE was well aware that there were inmates confined in the Knox County Jail who suffered from severe mental health needs and were at risk of suicide. Despite this knowledge, Defendant CLAGUE intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their mental health care needs.

87. Defendant CLAGUE knew at all times material to this action that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates at risk were provided the means to accomplish that end.

88. Defendant CLAGUE deliberately disregarded the immediate and serious threat

14

to inmates' mental health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat their serious mental illness, in that:

a.  with full knowledge of prior suicide attempts, and that suicides were reasonably foreseeable, Defendant CLAGUE simply failed to provide needed care and attention;

b.  with full knowledge that inmates had expressed thoughts of suicide and had made several suicide efforts, Defendant CLAGUE failed to consistently have such inmates monitored or observed on a regular basis;

c.  with full knowledge of inmates with histories of prior suicide attempts, it was incumbent on Defendant CLAGUE to take some action to provide such inmates with close suicide observation and psychiatric care; and

d.  with full knowledge of inmates with histories of prior suicide attempts, Defendant CLAGUE actions in failing to provide close observation and adequate psychiatric care by trained mental health professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

89.  In light of the aforementioned, Joey Corbin suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody

15

of Defendant CLAGUE. Defendant CLAGUE reacted to this risk in an

objectively and subjectively unreasonable manner.

90.  It is more likely than not that the failures of Defendant CLAGUE as alleged

above were the cause of Joey Corbin's suicide.

91.  As a result of  Defendant CLAGUE's disregard of and indifference to Plaintiff's

decedent's constitutionally protected right to be provided with proper care, to be

safe and free from harm, Plaintiff's decedent, Joey Corbin's medical needs were

ignored, he was instead subjected to ridicule and inattention.

92.  As a direct and proximate result of Defendant CLAGUE deliberate indifference

to Joey Corbin's serious mental health needs, Joey Corbin committed suicide by

hanging himself in his cell on October 27, 2015.

WHEREFORE, Plaintiff prays for judgment as noted below.


**II.  Claims under 42 U.S.C. 1983: HAWKINS, GLOSSIP and ABERNATHY**

93.  Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

94.  Plaintiff is entitled to relief against Defendants HAWKINS, GLOSSIP and

ABERNATHY under 42 U.S.C. § 1983, based on violation of the Fourteenth

Amendment to the U.S. Constitution.

95.  At all times material, Plaintiff's decedent, Joey Corbin had a constitutionally

protected right under the Fourteenth Amendment to the U.S. Constitution to

16

receive needed care while in the Knox County Jail and to have his mental health issues timely and properly assessed and treated.

96. Defendants HAWKINS, GLOSSIP and ABERNATHY deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in the Knox County Jail in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering and death.

97. Defendants HAWKINS, GLOSSIP and ABERNATHY were well aware of the facts that there were inmates who suffered from severe mental health needs and were at risk of suicide. Despite this knowledge, Defendants HAWKINS, GLOSSIP and ABERNATHY intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their mental health care needs.

98. Defendants HAWKINS, GLOSSIP and ABERNATHY knew at all times material to this action that there was a substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates at risk possessed the means to accomplish that end.

99. Defendants HAWKINS, GLOSSIP and ABERNATHY deliberately disregarded

17

the immediate and serious threat to inmates' mental health and well-being and

exhibited deliberate indifference and callous indifference to their serious medical

and psychological needs by denying and unreasonably delaying access to

competent mental health care to treat their serious mental illness.

100. In light of the aforementioned, Joey Corbin suffered from both an objectively

and subjectively substantial risk of serious harm while under the care and custody

of Defendants HAWKINS, GLOSSIP and ABERNATHY, Defendants

HAWKINS, GLOSSIP and ABERNATHY reacted to this risk in an objectively

and subjectively unreasonable manner.

101. It is more likely than not that the failures of Defendants HAWKINS, GLOSSIP

and ABERNATHY as alleged above were the cause of Joey Corbin's suicide.

102. As a direct and proximate result of Defendants HAWKINS, GLOSSIP and

ABERNATHY's deliberate indifference to Joey Corbin's serious mental health

needs, Joey Corbin committed suicide by hanging himself in his cell on October

27, 2015.

WHEREFORE, Plaintiff prays for judgment as noted below.


## III.   Claims under 42 U.S.C. 1983: Due Process Claims: ACH and STOMBERG

103. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.


18

104. Plaintiff alleges an action pursuant to the Fourteenth Amendment against Defendant ACH and individual Defendant STOMBERG.

105. Joey Corbin, as a person in custody, was in a special relationship with the ACH Defendants, within the meaning of the case law interpreting 42 U.S.C. §1983, which prohibits any person acting under color of federal law, from subjecting any person in custody to punitive conditions of confinement without due process of law.

106. The ACH Defendants, acting under color of law, intentionally and with conscious, callous, and deliberate indifference deprived Joey of his constitutional rights to due process.

107. The ACH Defendants' above-described conduct, acts and/or omissions constitute deliberate indifference to Joey's serious medical and mental health needs, and violated her rights under the Fourteenth Amendment to the United States Constitution to due process of law, and violated 42 U.S.C. §1983.

108. ACH Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Joey's Fourteenth Amendment rights, his mental suffering, anguish, other injuries, and death.

WHEREFORE, Plaintiff prays for judgment as noted below.

**IV.    *Monell* Claim: ACH**

109. The violations of Joey Corbin's constitutional rights under the Eighth and
Fourteenth Amendment to the United States Constitution, his damages and the
conduct of the individual defendants, were directly and proximately caused by
the actions and/or inactions of ACH, which have, with deliberate indifference:

   a)      failed to establish and/or implement policies, practices and procedures
           to ensure that inmates at the Knox County Jail receive appropriate
           medical care for serious physical and mental health needs, and if
           necessary, health care services outside the jail;

   b)       failed to establish and/or implement policies, practices and procedures
           to ensure that inmates the Knox County jail receive appropriate
           medical care for serious medical and mental health needs;

   c)      failed to adequately assess and provide adequate care and treatment for
           inmates who are a danger to themselves or others at the Knox County
           Jail;

   d)      failed to adequately monitor the deteriorating mental health conditions
           of inmates;

   e)      failed to ensure through training, supervision and discipline that medical
           staff at the Knox County Jail in necessary circumstances, make a
           referral for health care services outside the jail;

20

f)      failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental health conditions;

g)      failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating mental health conditions;

h)      failed to contract for medical and mental health services in a manner so that financial incentives would not affect referring inmates for health care services outside the jail;

i)      possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies.

WHEREFORE, Plaintiff prays for judgment as noted below.


## V.      State Claim for Wrongful Death: CLAGUE

110.   Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

111.   Joey Corbin was and is survived by his three children, whom constitute his heirs under Illinois law.

112.   Decedent Joey Corbin was officially pronounced dead on October 30, 2015.

113.   The wrongful death of Joey Corbin was proximately caused by the neglect,

default, and/or willful and wanton conduct of the Defendants, as described above, in violation of 740 ILCS § 180/1.

114. CLAUGE employee HAWKINS failed to do her mandatory rounds and check on the health and wellbeing of Joey Corbin

115. HAWKINS'S wrongful conduct was the direct and proximate cause of injury and damage to Joey Corbin and is estate.

116. As next of kin, the heirs of Joey Corbin have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son, and have incurred funeral and burial experiences as a proximate result of her wrongful death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## Damages

A. The Estate of Joey Corbin has sustained the following damages:

1. funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;

2. loss of prospective net Estate accumulations;

3. decedent's conscious pain and suffering and the inherent value of life;

4. pre- and post-judgment interest; and

5. loss of earnings of Joey Corbin from the date of his death, less lost support of his survivors excluding contributions in kind with interest.

B.  Olivia Jean Corbin, as the daughter of Joey Corbin, has sustained the following damages:

   1.  great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of his life;

   2.  pre- and post-judgment interest; and

C.  Greyson Jacob Flynn, as son of Joey Corbin, has sustained the following damages:

   1.  great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of her life;

   2.  pre- and post-judgment interest.

D.  Bentley Joseph Corbin, as son of Joey Corbin, has sustained the following damages:

   1.  great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of her life;

   2.  pre- and post-judgment interest.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

23

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs seek judgment as follows:

A.    Compensatory damages against each of the defendants herein;

B.    Punitive damages against defendants sued individually;

C.    Attorney's fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

D.    A trial by jury on all issues so triable;

E.    Such further relief as the Court deems just and proper.


Respectfully Submitted,

*s/Louis J. Meyer*
Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
t. 309.713.3751
f. 312.585.7803
e. louismeyer@meyerkiss.com

24